Robert Donnie GREEN, Appellant,

v.

The STATE of Texas, State.

No. 2–88–162–CR.

Court of Appeals of Texas,
Fort Worth.

March 21, 1990.

James H. Shaw, Fort Worth, for appellant.

Barry L. Macha, Dist. Atty., Wichita Falls, for State.

Before WEAVER, C.J., and FARRIS and HILL, JJ.

## OPINION

FARRIS, Justice.

Green appeals his conviction for murder. Following his not guilty plea, the jury found Green guilty and assessed his punishment at twenty years confinement in the Texas Department of Corrections and a $5,000 fine.

Green was · a bail bondsman. He had made three bail bonds for the victim, Shults, and the bonds had been ordered forfeited because of Shults' failure to appear in court. At the time of the offense, Green was trying to apprehend Shults. When Shults fled, Green shot Shults in the back with number 4 shot fired from a .12 gauge shotgun.

On appeal, Green complains that the trial court erred in: (1) including "unlawfully" in the charge thereby allowing him to be convicted on a lesser culpable mental state; (2) in refusing his requested instructions relating to his reliance upon a purported U.S. Supreme Court opinion and a mistake of fact with regard to whether a shotgun was capable of causing death; (3) in affirmatively finding he exhibited and used a deadly weapon during the commission of the offense; and (4) in deleting "sudden passion" from the murder paragraph of the charge. We overrule all four of Green's points of error because: (1) "unlawfully" was harmless surplusage; (2) the trial court properly excluded the requested instructions; (3) the trial court's affirmative finding was proper; and (4) the court's charge on murder and the lesser included offense of voluntary manslaughter were submitted without relevant objection in substantially the form requested by Green.

The judgment of the trial court is affirmed.

■ In his first point of error, Green complains the trial court erred in charging the jury that it should find him guilty of the offense of murder if they felt he "unlawfully," intentionally or knowingly caused the death of the victim by shooting him with a shotgun. Green did not object to "unlawfully" being included as a part of the charge. On appeal, Green argues the inclusion was fundamental error because it permitted the jury to convict him on a lesser culpable mental state than that prescribed by statute. *See* TEX.PENAL CODE ANN. sec. 6.02(c) (Vernon 1974). We do not agree with Green's argument that including "unlawfully" as a part of the charge would mislead the jury as to the definition of culpable mental state and hold that the use of "unlawfully" was mere surplusage. *See Grice v. State*, 635 S.W.2d 890, 893 (Tex.App.—Dallas 1982, pet. ref'd). Further, from a review of the relevant portions of the entire record, we have determined that Green was not denied a fair and impartial trial as a part of the inclusion and hold that no egregious harm resulted to Green. *See Arline v. State*, 721 S.W.2d 348, 351 (Tex.Crim.App.1986); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984) (opinion on reh'g). Green's first point of error is overruled.

In his second point of error, Green complains the trial court erred in refusing to submit requested jury instructions concerning arrest by a private person and his mistaken belief that an opinion of the U.S. Supreme Court gave him the same authority as a peace officer to make arrests. Green also complains in point of error two that the trial court erred in failing to submit an instruction on his mistaken belief of fact that a shotgun was not capable of causing serious bodily injury or death.

■ Considering Green's complaint that the trial court erred in failing to submit an instruction on mistake of fact as to the deadliness of a shotgun, we note he neither requested an instruction nor made an objection to the failure to instruct and error is not preserved. Further, Green was not entitled to the instructions because the mistake was one regarding the consequences of his conduct rather than conduct relying upon a mistake of fact. *Montgomery v. State*, 704 S.W.2d 359, 362 (Tex.App.—Corpus Christi 1985, pet. ref'd).

■ In connection with his complaint that the trial court erred in refusing to submit his requested instruction on mistake of law, Green points to his request for an instruction that the jury should find Green not guilty if it found by a preponderance of the evidence that he reasonably believed, based upon a written court opinion, that he had the same authority as a peace officer and also believed the use of deadly force was immediately necessary to make an arrest and also believed there was a substantial risk that Shults would cause death or serious bodily injury either to Green or to another.

TEX.PENAL CODE ANN. sec. 8.03(b)(2) (Vernon 1974) provides an affirmative defense to prosecution that the accused believed his conduct did not constitute a crime that he acted in reasonable reliance upon a written interpretation of the law contained in an opinion of a court of record. Green testified that he had relied on an United States Supreme Court opinion which authorized bondsmen to make arrests and this power included the authorization to make interstate arrests, and if necessary, to break down a door in order to accomplish an arrest. Green was apparently making reference to the opinion in *Taylor v. Taintor*, 83 U.S. (16 Wall.) 366, 21 L.Ed. 287 (1873), which provides in part:

> When bail is given, the principal is regarded as delivered to the custody of his sureties. Their dominion is a continuance of the original imprisonment. Whenever they choose to do so, they may seize him and deliver him up in their discharge, and if that cannot be done at once, they may imprison him until it can be done. They may exercise their rights in person or by agent. They may pursue him into another State; may arrest him on the Sabbath; and if necessary, may break and enter his house for that purpose.

*Id.* at 371. It is unclear whether Green had seen a copy of the opinion or merely a publication which quoted or cited the opinion. Green did not introduce into evidence a copy of the writing upon which he relied, styled the case as "Taylor v. Tanner," and was unaware of when the opinion was handed down.

Section 8.03(b)(2) is an exception to the general rule that ignorance of the law is no defense. It was Green's burden to offer proof that his reliance was upon a written interpretation contained in an opinion of a court of record and that he acted in reasonable reliance upon that opinion. Green's argument fails because by his own admission, in shooting Shults in the back, Green was not relying on a mistaken belief as to his authority to make an arrest but rather upon his belief that he was acting in self-defense. Five times Green testified clearly and affirmatively that the shooting was in self-defense.

Green first testified that "when I got there, I seen him in plain view and if I had wanted to shoot him, I could have took the gun right there and shot him. I had no intention of just actually shooting someone to be shooting or even for stopping them as he was." "And he turned around to shoot at me...." "And at that time I didn't just take a careful aim and sit there and shoot him, but at that time I went ahead and shot in self-defense." Further, in response to a question from his attorney, Green testified, "I was in fear for my life, especially once I pulled over there and seen the situation I was in. But when he reached for his front, I just assumed that he was probably getting ready to start taking a shot at me or possibly my son who was coming around the other side." Again, in response to cross-examination inquiring why he fired at Shults, his response was, "for protection." And again, in response to a question from the prosecutor, "[Y]ou fired that gun because you wanted to shoot Mark Shults, didn't you?" Green replied, "No, sir." "I fired it for protection."

Because of his reported admissions that he shot Shults in self-defense, his testimony and the evidence entitled him only to an instruction on self-defense which was included in the court's charge. Green's second point of error is overruled.

■ In his third point of error, Green complains the trial court erred in affirmatively finding that he exhibited and used a deadly weapon because that issue should have been submitted to a jury and he was not put on notice that the State would seek such an affirmative finding. Since Green did not object to the finding in the trial court, he now contends the error was fundamental. The indictment alleged the use of a shotgun which is, per se, a deadly weapon. *See Ex parte Franklin,* 757 S.W.2d 778, 783 (Tex.Crim.App.1988). It follows that the language of the indictment was sufficient notice the State would seek a deadly weapon charge. *See Gilbert v. State,* 769 S.W.2d 535, 536 (Tex.Crim.App. 1989). Green has never contested the fact that he shot Shults with a shotgun. The trial court was clearly authorized to enter such a finding. *See Polk v. State,* 693 S.W.2d 391, 396 (Tex.Crim.App.1985). Green's third point of error is overruled.

■ In his fourth point of error, Green complains the trial court erred in omitting the defensive issue of "sudden passion" from the paragraph on murder and only including it in the voluntary manslaughter paragraph of the court's charge. Green complains this submission significantly diminished the State's burden of proof. However, Green did not object to the charge on this ground and in his requested submission, included the "sudden passion" defense only as a part of the voluntary manslaughter paragraph and not as a part of the proposed murder paragraph. Therefore, he will not be heard to complain on appeal of a charge which substantially complied with his requested submission. *See Tucker v. State,* 771 S.W.2d 523, 534 (Tex. Crim.App.1988), *cert. denied,* — U.S. —, 109 S.Ct. 3230, 106 L.Ed.2d 578 (1989). Green's fourth point of error is overruled.

The judgment of the trial court is affirmed.

HILL, J., dissents.

HILL, Justice, dissenting.

I respectfully dissent, because I find that the trial court erred by failing to submit a charge to the jury on the defense of mistake of law as requested by Green.

Section 8.03(b) of the Texas Penal Code provides that:

It is an affirmative defense to prosecution that the actor reasonably believed the conduct charged did not constitute a crime and that he acted in reasonable reliance upon:

.    .    .    .    .

(2) a written interpretation of the law contained in an opinion of a court of record....

TEX.PENAL CODE ANN. sec. 8.03(b) (Vernon 1974).

Green testified at trial that in arresting his principal he was relying on the opinion of the 1873 United States Supreme Court case of *"Taylor v. Tanner."* As the majority acknowledges, he was relying on the case of *Taylor v. Taintor,* 83 U.S. (16 Wall.) 366, 21 L.Ed. 287 (1873). In that opinion the Court acknowledged the common law right of a bail bondsman to arrest his principal without a warrant, likening the right to that of a sheriff arresting an escaping prisoner. *Id.* at 371.

Based on that opinion, Green felt that in making the arrest of the deceased he had the same rights as a sheriff or peace officer.

Section 9.51(a) of the Texas Penal Code authorizes the use of force by a peace officer who reasonably believes he is making a valid arrest and who has identified himself and his purpose, unless he reasonably believes his identity and purpose are known or cannot be made known to the person to be arrested.

Section 9.51(c) authorizes the use of deadly force by a peace officer if the officer reasonably believes that deadly force is immediately necessary to make an arrest if the use of force is justified and if the officer reasonably believes there is a substantial risk that the person to be arrested will cause death or serious bodily injury to the actor or another if the arrest is delayed.

Green testified that when he attempted to arrest the deceased, he saw him running with something black in his hand. He said that he had been informed that the deceased had a gun. He said he shot the deceased when the deceased turned toward him and reached his hand around to where he was supposed to be carrying a gun. He said he felt that his life was in danger. He said that he thought the deceased was possibly going to shoot him or Green's son.

It would appear that if Green were a peace officer a jury would be justified in finding that the use of deadly force was authorized under section 9.51(a) and ·(c). Green felt that he had the same rights in making an arrest as a peace officer, based upon the case of *Taylor v. Taintor, supra.*, which is a written interpretation of the law contained in an opinion of a court of record. Therefore, Green was mistaken as to his right to use deadly force because of his reliance on a written interpretation of the law contained in an opinion of a court of record. Due to the fact that his mistake of law was based on such an opinion, Green was entitled to have the jury determine whether his reliance was reasonable and therefore whether he should have been acquitted under his defense of a mistake of law.

The only basis offered by the majority in support of its contention that the trial court did not err in failing to instruct the jury as to the defense of mistake of law is the fact that Green testified that he shot the deceased in self-defense and a charge on self-defense was given. Green's testimony that he shot the deceased in self-defense is testimony which raises the defense of mistake of law because a peace officer, as I have previously noted, under some circumstances has the right to use deadly force if the officer reasonably believes there is a substantial risk that the person to be arrested will cause death or serious bodily injury to the officer. Therefore, Green's testimony that he shot the deceased in self-defense may have required an instruction on self-defense, but it also raised, and was not inconsistent with, the affirmative defense of mistake of law. Since the testimony was sufficient to give rise to the affirmative defense of mistake of law, and the testimony was not inconsistent with that defense, the trial court was required to submit the defense.

The majority's determination that the trial court did not err by failing to give the requested mistake of law instruction is apparently based on an unspoken assumption that Green's use of the term "self-defense" limited him to that defense, even though the testimony was not inconsistent with the mistake of law defense. Green is not an attorney. There is no reason to believe that his use of the term "self-defense" in his testimony was an election on his part as to the defense on which he relied. He was merely relating what happened in layman's terms. His description was consistent with the requirement necessary for a peace officer's use of deadly force. Taken together with his testimony that he was relying on the Supreme Court opinion in thinking that he had the same rights in this situation as a peace officer, it raised the defense of mistake of law. Therefore, the trial court erred in failing to instruct the jury as to the defense, because a defendant is entitled to an affirmative defense instruction on every issue raised by the evidence, regardless of the strength of the evidence. *Hayes v. State,* 728 S.W.2d 804, 807 (Tex. Crim.App.1987) (opinion on reh'g).

Since Green objected to the trial court's failure to give this instruction, we must reverse if the error is calculated to injure Green's rights, which means that there must be some harm to the accused from the error. *See Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984) (opinion on reh'g). Green was harmed because he was denied the submission of the affirmative defense of mistake of law. The submission of the instruction on self-defense did not render the error harmless because it was not as favorable to the defense under the facts of this case.

The jury was instructed that if they found, beyond a reasonable doubt, that a

reasonable person would have retreated before using deadly force against the deceased, that they must find against the defendant on the issue of self-defense. Had Green been in the place of a peace officer making an arrest, as he testified he thought that he was, he would have been under no duty to retreat before using deadly force in self-defense. Because Green had the burden of showing a reasonable person would not have retreated, a burden he would not have had if the mistake of law defense had been submitted, he was harmed by the court's failure to give the mistake of law submission.

I would sustain point of error number two, reverse the judgment and remand this cause to the trial court for a new trial.